OPINION
The facts giving rise to defendant Malek B. Aliane's conviction and sentence occurred between October 2, 2000, and November 26, 2000. On October 2, 2000, defendant entered a Value City Furniture store in Franklin County and selected several pieces of furniture. As payment for this furniture, defendant issued a personal check in the amount of $4,671.07 which was drawn on a closed account.
Approximately three weeks later, on October 24, 2000, defendant walked into the Bob Caldwell Dodge automobile dealership and negotiated to purchase a new 2001 Dodge Stratus. As payment, defendant issued a personal check for $28,085.30. This check was also drawn on a closed account.
The next afternoon, on October 25, 2000, defendant negotiated to purchase a 2000 Pontiac Firebird from the Dennis Pontiac automobile dealership. As payment, defendant attempted to pass a personal check in the amount of $27,025.20. That check was also drawn on a closed account.
On October 27, 2000, defendant purchased a 2000 Lincoln Navigator from the Rush Motor Sales dealership, issuing a personal check in the amount of $25,000 as partial payment. However, this check was drawn on a closed account.
The next day, October 28, 2000, defendant purchased a 2000 Chevrolet Camaro from Nathan Holmes Chevrolet. Defendant issued as payment for the vehicle a personal check in the amount of $33,129.47. This check was drawn on a closed account as well, bringing the total amount of the defendant's fraudulent purchase of automobiles to $113,239.97. However, the defendant's crime spree did not end here.
On November 26, 2000, the defendant and a friend entered the Sear's department store located at Northland Mall. There, the defendant passed himself off to a number of the employees present as a manager-trainee. While there, he "assisted" his friend as that individual shopped for clothing. When done, defendant appeared to ring up the purchases at one of the store's cash registers. In reality, however, no money changed hands, and the defendant and his friend walked out of the store with $561.78 worth of merchandise.
Finally, on January 3, 2001, defendant checked into the Embassy Suites Hotel located at 2700 Corporate Exchange Drive using a counterfeit check in the amount of $2,432.22. This check was purportedly drawn on a business account by the name of Aliane Credit Solutions and cited a nonexistent account with the Bank of New York. When police responded to the hotel and searched the defendant's room, they found evidence of the fictitious account used to pay for the room, as well as evidence of several other fictitious accounts and checks.
In December 2000, defendant was indicted by a Franklin County Grand Jury and charged with one count of passing a bad check in violation of R.C. 2913.11, a felony of the fifth degree ("F5"), four counts of passing bad checks in violation of R.C. 2913.11, each a felony of the fourth degree ("F4"), and one count of theft in violation of R.C. 2913.02, a felony of the third degree ("F3"). These charges became case No. 00CR-12-6960 in the Franklin County Court of Common Pleas.
One month later, defendant was indicted by another Franklin County Grand Jury, and charged with one count of possessing criminal tools in violation of R.C. 2923.24, a felony of the fifth degree ("F5"), and one count of forgery in violation of R.C. 2913.31, also a felony of the fifth degree ("F5"). These charges became case No. 01CR-01-213.
Five months later, on June 12, 2001, defendant was again indicted by a Franklin County Grand Jury and charged with theft in violation of R.C.2913.02, another felony of the fifth degree ("F5"). This charge became case No. 01CR-06-3405.
Each of the defendant's cases was consolidated for trial and came before the Franklin County Court of Common Pleas on July 19, 2001. On that date, the defendant pled guilty in case No. 00CR-12-6960 to four counts of passing bad checks and one count of attempting to pass a bad check. In exchange, the charge of theft was dismissed. In case No. 01CR-01-213, defendant pled guilty to one count of attempting to pass a bad check. Finally, in case No. 01CR-06-3405, defendant pled guilty to one count of theft. After accepting the defendant's plea, the court ordered a presentence investigation and scheduled sentencing to occur on August 31, 2001.
At the conclusion of defendant's sentencing hearing, in case No. 00CR-12-6960, the trial court imposed sentences of eleven months for each of the F5 counts, and seventeen months for each of the F4 counts. In case No. 01CR-01-213, the trial court imposed a sentence of 102 days in the Franklin County Jail, for which defendant was credited for time served. Finally, in case No. 01CR-06-3405, defendant received a sentence of eleven months. All of the sentences were ordered to be served consecutively. Defendant now appeals, raising the following two assignments of error:
 [1.] The trial court erred in imposing a term greater than the minimum period of incarceration, without making findings as required by R.C. 2929.14, upon a defendant with no prior history of imprisonment.
 [2.] The trial court erred in imposing consecutive terms of imprisonment, in violation of R.C. 2929.14(E)(4).
When "sentencing a felony offender, a trial court must impose a sentence that is reasonably calculated to achieve the two overriding purposes of felony sentencing, i.e., protecting the public from future crime by the offender and others and punishing the offender." State v. Hough (1999), Franklin App. No. 99AP-238. In doing so, the trial court must consider the need to prevent future crime, rehabilitation, and restitution. In addition, the court must impose a sentence that is commensurate with, and not demeaning to, the seriousness of the offender's conduct, and its impact upon the victim or victims. Id. Moreover, Ohio law provides trial courts with broad discretion when sentencing within the statutory guidelines, and this court will not override the court's sentence unless the trial court has abused its discretion. State v. Epley (1998), Franklin App. No. 97APA11-1467, and State v. Cassidy (1984), 21 Ohio App.3d 100, 102.
In his first assignment of error, defendant claims the trial court failed to make the findings required by R.C. 2929.14(B), which reads as follows:
 * * * [I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
In State v. Edmonson (1999), 86 Ohio St.3d 324, the Ohio Supreme Court explained:
 We construe this statute to mean that unless a court imposes the shortest term authorized on a felony offender who has never served a prison term, the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence. [Id. at 326.]
However, the court continued:
 R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence. By contrasting this statute with other related sentencing statutes, we deduce that the verb "finds" as used in this statute means that the court must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons. With other sentencing statutes, the General Assembly explicitly demands that courts give reasons. R.C. 2929.19(B)(2) requires a trial court to "make a finding that gives its reasons for selecting the sentence imposed." (Emphasis added.) In R.C. 2929.19(B)(2)(b), the General Assembly requires a court to provide a finding and an explanation by stating that the court shall set forth "the basis of the findings it made." We discern from the difference in the language of these sections within the same chapter and on the same subject — sentencing — that had the General Assembly intended the R.C. 2929.14(B) finding to include reasons, it would have explicitly expressed that intent as it did in R.C. 2929.19(B)(2). [Id.]
Accordingly, the court held in the syllabus of Edmonson that:
 R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence. [Emphasis sic.]
Although the defendant claims that the trial court failed to make either of the required findings, this claim is clearly false. In this case, the trial court specifically found: "I * * * believe that this is one of those cases where we have to take into consideration an additional factor, and that is that the overriding concern for sentencing * * * is protection of the public. And I think this man needs to be incarcerated for protection of the public." [8/31/01 Tr. p. 11.] What the defendant really argues is best summarized on page six of his brief where he states: "Although the court discussed Appellant's risk to the public, the court did not explain how imposing the minimum term of incarceration, as contemplated by the statute and the Supreme Court, would demean the seriousness of the offenses." However, the statute does not require the court to explain the reasons for finding that the public will not be adequately protected from future crime before it can lawfully impose more than the minimum authorized sentence under R.C. 2929.14(B). Accordingly, defendant's first assignment of error is overruled.
In his second assignment of error, defendant claims the court erred when it imposed consecutive terms of imprisonment. In order to lawfully impose consecutive sentences, a trial court must comply with the requirements set forth in R.C. 2929.14(E)(4), which provides:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
In addition to the foregoing, R.C. 2929.19(B)(2)(c) requires a trial court to state the reason or reasons causing it to impose consecutive sentences. State v. Moss (1999), Franklin App. No. 99AP-30. See, also, State v. Harper (2000), Franklin App. No. 00AP-23. As we explained in State v. Belfon (2000), Franklin App. No. 99AP-663, this requirement goes beyond the requirement that the trial court make findings required by R.C. 2929.14. Although we find it preferable for the trial court to incorporate its findings and reasoning in the sentencing entry, that information need not be specified in the entry so long as they are discernible from the record as a whole. Id. See, also, State v. Hess (1999), Franklin App. No. 98AP-983.
In this case, the trial court's judgment entry does not contain either the court's findings or reasons for imposing consecutive sentences. However, the court did make the following findings, which it explained from the bench at the conclusion of the defendant's sentencing hearing:
 THE COURT: All right. I have read the Presentence Investigation. I have read it in detail and I concur, this is a most unusual scenario.
 The defendant in this case stands charged with three felonies of the fifth degree total, and three felonies of the fourth degree, six felonies. It is most unusual.
 On 10/2/2000 the defendant wrote a fraudulent check to Value City Furniture for $4,671.70. Twenty-two days later on 10/24/2000 he wrote a fraudulent check to Bob Caldwell for $28,085.30. On 10/25, the very next day, he wrote another fraudulent check for $27,025.20. My understanding is in each of these cases was purportedly to buy a new car.
 Two days later, on 10/27/2000, he fraudulently wrote another check for $45,000 [sic] to Rush Motor Sales. And on 10/28, the very next day, he wrote another fraudulent check for $33,129.47 to Quality Chevrolet, again, for another vehicle.
 Within the span of a month, the latter four being in the span of about four days, [defendant] apparently wrote over $100,000 worth of checks, and I believe took possession of four new vehicles.
 He also wrote a counterfeit check on the checking account of Elaine [sic] Credit Solutions in the amount of $2,432.22 to Embassy Suites. That occurred on January 3rd, '01.
 He had another incident at Sears Department Store Northland whereby he went into the Sears store, apparently in very brazen fashion, represented himself as an employee, and he rang up sales for apparently a friend to the tune of $594.08 [sic]. And so this is most bizarre, to say the least.
 I had studied the Presentence Investigation. I will review the factors set forth in Senate Bill Two for sentencing.
 Factors that should be taken into consideration indicating that recidivism is likely: The defendant was on bond in Case No. 01CR-3405 when he committed 01CR-213. He was also out on bond on 2000CR-6960 when he committed 01CR-213.
 So he would do these things, get arrested, get out on bond and continued to do them. That seems to be a serious matter.
 Additionally, he insisted to his defense counsel just a few days ago that we have a bond hearing in this case and let him loose because he had posted bond. We set up the bond hearing as we always do, and when we got to the bond hearing he insisted that he posted bond and he should be released. He hadn't posted anything. I don't know what that's all about to this day. Obviously, I didn't release him.
 The Probation Department also finds that he shows no remorse, places blame on others for these offenses. He has imposed serious economic harm on the victims obviously with over $100,000 in fraudulent checks.
 The Probation Department also finds that these things are sophisticated, premeditated while-collar [sic] crimes. So they conclude and I concur that he shows no remorse. He appears to be a sophisticated, clever con man, and he is not amenable to community control sanctions.
 Additionally, the brazen, callous attitude is somewhat shocking I suppose in this case. He is, as I said before, he stands charged — or he stands convicted, I should say, of passing bad checks, three felonies of the fourth degree. He also stands convicted of three felonies of the fifth degree, passing bad checks.
 I think it's important to point out for purposes of sentencing that this is the worst kind of passing bad checks, if you will, the worst incident of passing bad checks that I have seen perhaps ever. Additionally, I think for that reason consecutive sentences are warranted.
 I also believe that this is one of those cases where we have to take into consideration an additional factor, and that is that the overriding concern for sentencing and that is protection of the public. And I think this man needs to be incarcerated for protection of the public. Additionally — so I think for all those reasons this case deserves consecutive sentences and I intend to do that. [8/31/01 Tr. pp. 8-12.]
While the applicable statutes do not require "rote incantations" of specific language, they do require the sentencing court to clearly set forth its findings, as well as include a cogent explanation of the reasons supporting those findings. State v. Fitzmorris (1998), Franklin App. No. 98AP-340. Here, although the record may well support the imposition of consecutive sentences for these offenses, we are unable to clearly locate or determine where the court made the specific findings required by R.C. 2929.14(E)(4). We are unable to clearly decipher the court's explanation of the reason or reasons supporting its imposition of consecutive sentences. Accordingly, defendant's second assignment of error is sustained.
For the foregoing reasons, defendant's first assignment of error is overruled, and his second assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for resentencing.
Judgment affirmed in part, reversed in part, and cause remanded for resentencing.
BOWMAN and KLATT, JJ., concur.